FRANK LOW V. STATE.

No. 25230. March 28, 1951.
Rehearing Denied May 2, 1951.

Hon. Howard P. Green, Judge Presiding.

*Pichinson, Davis & Hale, Norman L. Utter, Dean B. Kirk-ham,* Corpus Christi, and *Wesley Zarsky,* Refugio, for appellant

*George P. Blackburn,* State's Attorney, Austin, for the state

MORRISON, Judge.

The offense is murder; the punishment, thirty-five years in the penitentiary. There is no contention that the facts do not support the verdict.

Appellant presents eight bills of exception, five of which he urges as reflecting error. Bills of exception one to four deal with the court's overruling appellant's challenge for cause directed at four different veniremen. It is necessary for this court to pass on only Bill of Exception No. 4 directed at venireman W. F. Abney. This is so because, as shown by the court's announcement just before Abney was examined, eleven jurors had been chosen; appellant had used his fifteen challenges and had been granted three extra peremptory challenges.

We now look to the correctness of the court's ruling on appellant's challenge to venireman Abney. On direct interrogatory by the district attorney, Abney stated that he did not believe he had an opinion as to the guilt or innocence of the defendant such as would influence him in his verdict. He stated further

that his mind was open about the merits of the case and that he believed he could be a fair juror to both sides if taken.

On cross examination, Abney stated that he had not heard any witness discuss the case but had heard some hearsay discussions of the events leading up to the homicide and those transpiring at the time thereof. He was then asked, "Do you have a fixed opinion as to some phase in your mind at this time?"; to which he answered, "Yes, sir, I guess I do."

After stating that the opinion which he had would require evidence to be changed, Abney was questioned by the court. He answered that the talk which he had heard was sufficient for him to form an opinion with reference to the guilt or innocence of the defendant. The court then propounded him this question:

"Q. Now, then, of course, you understand what we are doing —selecting a jury of perfectly fair and impartial men without anything on their mind which would work on them and influence them as jurors in the case outside of the testimony. We are trying to get a jury of twelve men who must be fair and impartial to both the State and the defendant, have not any notion in their mind whatever as to what they feel should be done with the case. Do you feel you are such a man or do you feel from what you have heard you have got something in your mind which would probably influence you as a juror?" To which he answered, "I don't believe I would be influenced by it."

The court concluded its examination as follows:

"Q. And do you feel if selected on this jury you could go in the jury box with an open mind as to this case and try it strictly on the law and the evidence? A. Yes, sir, I believe so.

"Q. Without considering anything that might have gone before, you feel you can put that aside? A. Yes, sir.

"Q. And you say you would do that if taken on the jury? A. Yes, sir."

This ended the examination, and the court held him to be qualified.

The test of a juror's qualification under C.C.P. Art. 636, Subdiv. 13, of C.C.P. of 1879, which is substantially identical to Art. 616, Subdiv. 13, of C.C.P. 1925, was laid down by Judge Davidson in Suit v. State, 30 Tex. Cr. R. 519, 17 S.W. 458, wherein he said:

"Under the statute, in order to disqualify a juror on account of a conclusion on his part as to the guilt or innocence of the party on trial, two things are necessary: (1) That there is in some way established in the mind of the juror a conclusion as to the guilt or innocence of such party; (2) That such conclusion will influence the juror in his action in finding a verdict. ... The mere fact that a juror has established in his mind a conclusion of the guilt or innocence of the party on trial is not a sufficient cause for disqualification. That conclusion, if entertained, must go further, and be of such a character 'as will influence him in finding his verdict.' "

Applying this test to the facts before us, we do not feel that it was shown that the juror would be influenced in arriving at a verdict from what he had heard or that the trial court abused his discretion in overruling the challenge for cause directed at venireman Abney.

Bill of Exception No. 7 complains of jury misconduct. An examination thereof reveals that ten of the jurors who tried the case were in attendance on the hearing of appellant's motion for new trial. The appellant offered three jurors and the state none. Appellant's brief directs this court's attention to the testimony of Jury Foreman E. L. Yolland and earnestly contends that reversible error is shown therein because of a comment on the defendant's failure to testify.

In answer to appellant's counsel, Juror Yolland replied, "The question was asked why he did not take the witness stand, and I answered it that it was the defendant's privilege whether he wanted to take the witness stand and that we were not to take into discussion whether he was to take the stand or not as far as our part of it. It was in the form of a question and answered in that manner, and there was no further discussion."

He was further questioned: "Let me ask you, I refer you now to a statement, either that a juror, either you or someone in answer to that question said 'on account of his reputation.' "

And answered: "Not on account of his reputation, not on account of Frank's reputation, but in answer to the question that a defendant whenever he takes the stand that would open up the whole life of his reputation, merely a rule in regard to a defendant taking the stand, he does not have to take the stand."

The witness stated further: "But the substance was put as a question and was answered as to apply to the general law, and it was immediately dropped after the answer and was in the spirit of an answer and not as a discussion and did not go into a discussion, is what I am trying to get clear."

On cross examination by the state, Yolland explained as follows: "The questions were asked in this spirit: No more than I asked Judge Green on whether we were confined to any set manner of voting; his answer was to vote as we saw fit, and that was in the true spirit of questions that were asked in regard to that, and those answers were given in accordance, and there was no more discussion, and that is the reason I could not get that on paper at all that true spirit of the questions and answers that I refused to sign that affidavit."

The affidavit which he refers to was submitted by appellant's counsel to juror Yolland prior to the hearing, and he has refused to execute the same. The affidavit had been so prepared as to show a discussion by the jury of appellant's failure to take the stand on account of his reputation.

At the time the above discussion was had in the jury room, all jurors had agreed as to appellant's guilt. It is not clear whether they had begun to ballot on the punishment when such statement was made. Such balloting covered the spread from thirty to ninety-nine years.

Juror Woolsey related that some member of the jury posed the question of why the defendant had not testified but did not remember any answer being given to the question.

Juror Shipp testified that he did not hear any such question. These three were the only jurors interrogated.

The court's charge had instructed the jury, as is customarily done, that the failure of the defendant to testify should not be considered by them as any evidence concerning his guilt.

We are now confronted with a determination of whether the above was jury misconduct or was merely a discussion of the court's charge. It will be seen from the answer given by juror Yolland that he considered what was said as a discussion of a principal of law announced in the charge and not a reference to the defendant personally.

It will be noted that this juror stated that they based their verdict on only the law, and the evidence in the case, and that "the matter about the defendant" did not influence their verdict.

Art. 710, C.C.P., prohibits the allusion or comment by counsel on defendant's failure to testify but says that the jury shall not take such as a circumstance against him. An allusion or comment is relatively easy to ascertain from the words used while the entire trial must be reviewed to determine whether the jury took his failure to testify as a circumstance against him. We do not feel that appellant established that such was done by the testimony shown above.

This comment took place after all the jury had voted appellant guilty. Their convictions as to the punishment varied from thirty to ninety-nine years. They finally assessed his punishment at thirty-five years.

In Wilson v. State, 129 Tex. Cr. R. 180, 86 S.W. 2d 220, this court reviewed the law on the subject and expresses, we think the views of this court in recent years. Therein it is stated, "The question on appeal is whether the facts made evident that the appellant's failure to testify were taken by the jury as a circumstance against him." We hold that any such discussion must be personalized as to appellant and that a discussion of the court's charge alone will not constitute error.

We do not feel that the trial court abused its discretion in overruling appellant's motion for new trial. No further bills of exception are urged. Finding no reversible error in the record, the judgment is affirmed.

### ON MOTION FOR REHEARING.

GRAVES, Presiding Judge.

Appellant has filed a comprehensive motion for rehearing herein alleging, among other things, that we were incorrect in our original opinion in that we made the statement:

"At the time the above discussion was had in the jury room, all jurors had agreed as to appellant's guilt. It is not clear whether they had begun to ballot on the punishment when such statement was made. Such balloting covered the spread from thirty to ninety-nine years."

From the statement of facts we take the following excerpts:

"Q. I will ask you whether the jury first balloted on the guilt or innocence of the defendant? A. Yes, sir.

"Q. Were they divided on that as to the guilt or innocence or was it all one way? A. All one way.

"Q. What way was that? A. Guilty.

"Q. And then you balloted on the term of years? A. Yes, sir. We spent some time studying the charge."

While this witness may have possibly made a contrary answer as to when the allusion was made to the defendant's failure to testify, still we think we were justified in making the above quoted statement in the original opinion.

Appellant stresses the further proposition at this time based upon the testimony of Mr. Yolland, the foreman of the jury, wherein it is said that in the discussion in the jury room during their deliberations some person made the statement that he wondered why Frank Low did not take the witness stand, and the foreman of the jury made the following statements:

"Q. I will ask you to state whether or not during your deliberations a statement was made by one of the jurors pertaining to the defendant, Frank Low, taking the witness stand? A. The question was asked.

"Q. Will you relate in your own words what took place in that connection? A. The question was asked why he did not take the witness stand and I answered it that it was the defendant's privilege whether he wanted to take the witness stand and that we were not to take into discussion whether he was to take the stand or not as far as our part of it. It was in the form of a question and answered in that manner and there was no further discussion.

"Q. Let me ask you, I refer you now to a statement, either that a juror, either you or someone in answer to that question said 'on account of his reputation.' A. Not on account of his reputation, not on account of Frank's reputation, but in answer to the question that a defendant whenever he takes the stand that would open up the whole life of his reputation, merely a rule in regard to a defendant taking the stand, he does not have to take the stand."

This was as far as the discussion went, and it was immediately dropped after this answer and was not further referred to.

The statute, Art. 710, Vernon's C.C.P., reads as follows:

"Any defendant in a criminal action shall be permitted to testify in his own behalf therein, but the failure of any defendant to so testify shall not be taken as a circumstance against him, nor shall the same be alluded to or commented on by counsel in the cause * * *."

It will be noted therefrom that the fact of the defendant's failure to take the stand shall not be taken as a circumstance against him, nor shall the same be alluded to or commented on *by counsel* in the cause. The testimony offered us herein shows that it was not further alluded to by anyone nor commented on by anyone further than as it is shown herein.

The contention is made that the jury by this statement of one of the jurors took into consideration something that had not been submitted to them and that raised the question of the defendant's reputation. In the first place, the defendant submitted his own reputation to the jury by reason of the filing of a request for a suspended sentence. See Art. 778, Vernon's Ann, C.C.P., and cases cited; also Mangum v. State, 139 Tex. Cr. R. 111, 139 S.W. (2d) 94; Stewart, 148 Tex. Cr. R. 480; 188 S.W. (2d) 167, and cases cited. In the next place, the jury evidently took no consideration of any kind of this discussion that has been complained of because of the fact that two further jurors testified on the hearing of the motion for new trial as to what they heard of the conversation. However, one of them did hear the foreman of the jury say that the jury had no right to take into consideration the defendant's failure to testify, and the matter was then dropped; and the other one heard nothing thereof. There were seven more jurors present in court at the time of this hearing and none of them was placed on the witness stand. Furthermore, we see no error in such statement of the foreman, and we do not think it could have affected this verdict in any way.

We think the court was fairly liberal to the appellant in that he gave him three extra peremptory challenges, making eighteen in all for appellant, in an excess of caution, he having overruled three challenges for cause and appellant had used three peremptory challenges on such jurors. He thus returned to the appellant any peremptory challenge that appellant had been forced to utilize in order to relieve himself of the presence of these three objectionable jurors.

We see no error presented herein, and the motion for rehearing is therefore overruled.