**Elzie CLARK, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 41960.**

Court of Criminal Appeals of Texas.

July 9, 1969.

Rehearing Denied Oct. 29, 1969.

Fred J. Finch, Jr., C. B. Bunkley, Jr., Dallas, for appellant.

Henry Wade, Dist. Atty., Malcolm Dade, Kerry P. FitzGerald and James P. Finstrom, Asst. Dist. Attys., Dallas, and Jim D. Vollers, State's Atty., Austin, for the State.

## OPINION

BELCHER, Judge.

The conviction is for receiving and concealing stolen property; the punishment, three years.

The admission into evidence of the testimony of Officer Cantrell that he found a man's suit and a tag in a locked room in the liquor store operated by the appellant is urged as error on the ground that the suit and tag were illegally obtained by Cantrell.

In appellant's brief he refers to the description of the locked room as given by Officer Cantrell. Cantrell stated that he had to go through a door leading from the retail section of the building along a hall to the room with a locked door which he opened with a pocket knife and there found a man's suit and a tag. The appellant testified that he used the room for rest during the day and on week-ends as sleeping quarters after he had closed other businesses he operated nearby. The state's testimony reveals that the locked room also contained Dixie cups, liquor, wine, musical instruments, ladies' clothing, new clothing, and suits.

The evidence of the state, including the testimony pertaining to the application for the liquor license at the store in question, reveals that the liquor store and the locked room were completely embraced within the one building.

It is undisputed that the appellant and his brother owned the Wine Stop Liquor Store in Dallas and that the appellant was the manager; and that the store was operated under and by virtue of a license issued by the Texas Liquor Control Board. The pertinent provisions of the Texas Liquor Control Act are set out below:

Article 666–13(d), Vernon's Ann.P.C., provides as follows:

"It is expressly provided that the acceptance of a permit or license issued under either Article I or Article II of this Act shall constitute an express agreement and consent on the part of the permittee or licensee that the Board, any of its authorized representatives, *or any peace officer shall have at all times the right and privilege of freely entering upon the licensed premises for the pur-pose of conducting any investigation* or for inspecting said premises for the purpose of performing any duty imposed by this Act upon the Board, its representative, *or any peace officer."*

Article 666–20, supra, provides:

"It is not intended by the provisions of this Section that a search warrant shall be required for any peace officer or any agent, representative, or inspector of the Board to search any premise covered by any permit or license under the provisions of this Act."

Art. 666–17(4), supra, provides:

"It shall be unlawful for any person operating under a permit under Article I of this Act to refuse to allow the Board, or any authorized representative of the Board, or any peace officer, upon request, to make a full inspection, investigation or search of any licensed premise or vehicle." (Section 41 provides for a penalty.)

Article 666–3a(7), supra, provides:

" 'Premise' shall mean the grounds as well as all buildings, vehicles, and appurtenances pertaining thereto, and shall also include any adjacent premises, if directly or indirectly under the control of the same person; provided, however, that subject to the approval of the Board or Administrator, *an Applicant may designate a portion of the grounds, buildings, vehicles, or appurtenances which shall not be a part of the Licensed Premise."* (Emphasis added)

The record does not show that the licensee restricted the licensed premises by designating that any portion thereof not be included.

 The right to prevent search and seizure by a person licensed to engage in a business regulated by law may be waived.

In 79 C.J.S. Searches and Seizures § 62, p. 816, it is said:

"The constitutional immunity from unreasonable searches and seizures may

be waived, as by a voluntary invitation or consent to a search or seizure. Thus individuals may waive their immunity to illegal searches of their persons, possessions, or dwelling houses, as well as to the illegal search of their premises, places of business, and searches and seizures of books, papers, or records. Hence, one who has thus consented to a search cannot thereafter complain of irregularities in the search warrant, or question its sufficiency or the manner of its issuance, since an invitation or consent to the search dispenses with the necessity of a search warrant altogether."

The following rule is announced on page 819:

"The constitutional immunity is sometimes waived by a person when he engages in a business which is regulated by law, the acceptance of a license to engage in such a business being a necessary acceptation of the statutory conditions and an implied waiver of the constitutional immunity to that extent."

In disposing of a *conviction for possession of heroin* in which the validity of the affidavit for the search warrant was attacked, the court in Tucker v. State, 244 Md. 488, 224 A.2d 111, 117, said:

" * * * * it is undisputed that alcoholic beverages were kept and sold on the premises under and by virtue of a license issued under the provisions of Code, Art. 2B, § 190 of which gives any peace officer the authority to inspect and search the licensed premises without a warrant, at all hours.* The only person seized was Tucker who, of course, was named in this warrant. No other persons were molested and only the licensed premises were searched. *In Davids v. State, 208 Md. 377, 118 A.2d 636 (1955) the defendant was convicted of bookmaking on evidence seized by police officers who entered his tavern without a warrant. We held that Code, Art. 2B, § 179 (now § 190) authorized their*

*entry upon his premises.* Since consideration of appellee's other points would amount simply to another passage over well charted seas further discussion seems unnecessary." (Emphasis added)

On reviewing a conviction for the unlawful *possession of barbiturates found on the licensed premises of the appellant* who was a licensee of the Texas Liquor Control Board, this Court held in Brown v. State, 391 S.W.2d 425, that:

"The investigation resulting in seizure of contraband was authorized by Article 666–13(d), of the Penal Code of Texas, which provides that acceptance of ·a permit or license issued under the Liquor Control Act 'constitute[s] an express agreement and consent on the part of the permittee or licensee that * * * any peace officer shall have at all times the right and privilege of freely entering upon the licensed premises for the purpose of conducting any investigation * * *.' "

In considering the search of licensed premises without a warrant upon a conviction for making and printing counterfeit cigarette tax stamps, this Court in Schepps v. State, 432 S.W.2d 926, 931, said:

"When a search is authorized by statute, then no affidavit for a warrant and no search warrant are necessary.

* * * * * *

"This Court has held that inspectors of the Liquor Control Board might enter upon the premises of a licensee without a search warrant. Plainos v. State, 131 Tex.Cr.R. 516, 100 S.W.2d 367, and Kelley v. State, 133 Tex.Cr.R. 180, 109 S.W.2d 482. See also Article 666–13(d), V.A.P.C., 'Texas Liquor Control Act.' The authority to search granted to the Comptroller and his employees and assistants under Article 7.27, supra, is comparable to the authority granted to the Liquor Control Board inspectors by Article 666–13(d), supra.

"We are not unmindful of the two recent decisions of the Supreme Court of the United States, Camara v. Municipal Court, 387 U.S. 523, 87 S.Ct. 1727, 18 L.Ed.2d 930; and See v. Seattle, 387 U.S. 541, 87 S.Ct. 1737, 18 L.Ed.2d 943. In neither case was probable cause shown, nor were the searches conducted on a licensee's premises by an employee of the licensing authority."

It has long been held by the courts of Teaxs that the right to sell liquor or have a liquor license is not a property right. A citizen has no inherent right to engage in the business of selling liquor, but he may engage in it only by permission of the State. 33 Tex.Jur.2d 154 Intoxicating Liquors, Sec. 21; State v. Bush, 151 Tex. 606, 253 S.W.2d 269.

The Texas Liquor Control Act, Article 666–13(b), supra, provides:

"Any permit or license issued under the terms of either Article I or Article II of this Act shall be purely a personal privilege, * * * and shall not constitute property."

3 Branch 2d 132, Section 1353, reads:

"A license or permit to sell liquor is purely a personal privilege and is held subject to all legal requirements and regulations. Texas Liquor Control Board v. Cannon, Tex.Civ.App., 147 S.W.2d 927; Texas Liquor Control Board v. O'Fallon, Tex.Civ.App., 189 S.W.2d 885; Jones v. Marsh, 148 Tex. 362, 224 S.W.2d 198. See also Corder v. Delgado, Tex.Civ.App., 234 S.W.2d 268; State v. Bush, 151 Tex. 606, 253 S.W.2d 269; Lowe v. Texas Liquor Control Board, Tex.Civ.App., 255 S.W.2d 252."

12 Tex.Jur.2d Constitutional Law, Sec. 78, Regulations of businesses, reads:

"Included within the police power is the authority to regulate, restrict, control, or prohibit the conduct of any business that affects the health, safety, morals, comfort, or general welfare of the public.

And any business that concerns the public at large calls for an exercise of regulation. Whether a business has become affected with a public interest is primarily for the determination of the legislature."

The thief, Welmon Richard, Jr., testified that he was caught in the act of trying to steal some suits at Sanger-Harris in Dallas on September 15, that upon his arrest he told the officers he was ready to "kick" the narcotic habit, and then told them that he had stolen four suits from J. C. Penneys, two days before, on September 13, and sold them that day to the appellant at his liquor store. (These are the suits alleged to have been received by the appellant.) He also testified that he had been in appellant's store many times. He further testified that at the time he stole the four suits he was a narcotic addict, and was supporting this habit, which cost him on an average of forty to fifty dollars per day which he obtained by stealing.

It is common knowledge that innumerable narcotic addicts support their habit by stealing.

The Texas Liquor Control Act, Article 666–2, supra, provides:

"This entire Act shall be deemed an exercise of the police power of the State for the protection of the welfare, health, peace, temperance, and safety of the people of the State, and all its provisions shall be liberally construed for the accomplishment of that purpose."

It is evident from the language of the Texas Liquor Control Act that it was the intent of the Legislature that its provisions should be followed under facts and circumstances as shown in this case.

■ The acceptance of the liquor store license issued in 1960 to engage in such business and the continued exercising of the privilege until the search of the liquor store on September 15, 1966, under the restrictions and limitations of the statute,

one of which was that, "any peace officer shall have at all times the right and privilege of freely entering upon the licensed premises for the purpose of conducting any investigation" waived the constitutional rights claimed so far as applicable to the facts in this case. 12 Tex.Jur.2d Constitutional Law, Sec. 78.

It is concluded that the search and seizure as shown by the record was authorized. This ground of error is overruled.

Another ground urged as error is the admission in evidence of State's Exhibit No. 5 which purports to be the record of a governmental subdivision for the reasons that it was not properly attested by the custodian thereof and a copy of same was not delivered to the appellant or his counsel within a reasonable time before the trial.

From the record it appears that such instrument was the license or was related to the licensing of the premises by the Texas Liquor Control Board.

■ This ground of error cannot be appraised for the reason that the instrument complained of is not contained in the record. No error is shown.

The complaints of the admission in evidence of State's Exhibits Nos. 6, 7 and 8, which were written instruments, on the ground that no proper predicate was laid cannot be reviewed for the reason that they are not contained in the record.

Error is urged on the ground that the trial court refused to give his requested charge to the jury on the corroboration of the testimony of the accomplice Richard.

■ The charge reflects that the court charged the jury pertaining to the corroboration of accomplice testimony.

The record contains no objections to the court's charge and fails to show that the requested charge was presented to the trial judge before the charge was read to the jury.

The claimed error in the charge is not before this court for review. Art. 36.14 and 36.15, Vernon's Ann.C.C.P.; 5 Tex.Jur. 2d 233, Sec. 150; Castelberry v. State, 88 Tex.Cr.R. 502, 228 S.W. 216; Gonzales v. State, 150 Tex.Cr.R. 329, 200 S.W.2d 827; Whitby v. State, 155 Tex.Cr. 192, 233 S.W. 2d 141; Garza v. State, 159 Tex.Cr.R. 134, 261 S.W.2d 581; Ayers v. State, 162 Tex. Cr.R. 586, 288 S.W.2d 511; Howell v. State, 171 Tex.Cr.R. 545, 352 S.W.2d 110; Fuller v. State, Tex.Cr.App., 380 S.W.2d 619; Seefurth v. State, Tex.Cr.App., 422 S.W.2d 931.

It is contended that the state failed to prove beyond a reasonable doubt that the appellant received four men's suits "of the value of $40 each and of the total value of over $50" as alleged in the indictment; that there is a fatal variance in that the testimony shows that appellant received only one suit and not four as alleged; that the proof fails to show the value of the suits received, if any, by the appellant was of over the total value of $50; and that the evidence fails to corroborate the testimony of the accomplice witness Richard that he stole four men's suits belonging to Glenn D. McQuinn and sold and delivered them to the appellant.

Welmon Richard, Jr., also known as Richard Welmon, Jr., testified that he went into the J. C. Penney store located at Lancaster and Kiest shopping center and stole four men's suits at one time and took them to his automobile and then drove directly to the liquor store operated by the appellant where he saw the appellant and placed the four suits on the counter; that there were tags on each of the suits he stole from Penneys and sold to the appellant; that he knew the appellant and the appellant knew him; that appellant asked him what he had and he told him "four suits"; that he asked appellant twenty dollars for each suit and the appellant offered fifteen dollars and said that if he (Richard) would steal a little better material that he would give him twenty. While testifying, the accomplice Richard identi-

fied one of the suits which was exhibited before him as one of the suits he stole and the tag shown to him as the same as the tags on each of the four suits, and he also identified the appellant as the person to whom he sold the suit. He further testified that he stole the four suits on September 13, and then identified one suit of the four at the police station on September 15.

Detective Cantrell testified that after he talked to Welmon Richard about 3:30 p. m., September 15, he went to the liquor store operated by the appellant; that the store was open, but the appellant was not there and when he asked to look around the store the employee Johnson told him to go ahead; that in a room behind the retail section which the appellant used to rest during the day and to sleep on week-ends he found one man's suit with a tag in the coat pocket; that he found four or five tags in a waste paper basket in the retail part of the store. While testifying, Cantrell identified State's Exhibit No. 2 as one of the tags he found in the waste basket.

Glenn D. McQuinn testified that on September 13, 1966, he was the Sales and Merchandise Manager for the J. C. Penney store in the Lancaster and Kiest shopping center; that he examined State's Exhibits Nos. 1 and 2, coat and pants of a size 42 suit, and one tag for a size 38 suit, respectively, in the property room of the police station; that these exhibits came from and were the property of a J. C. Penney store; that four suits were taken from the J. C. Penney store located in Lancaster and Kiest shopping center in Dallas on September 13, 1966; that they were of the value of forty dollars each; that he had the care, custody and control of the four suits and did not give anyone his consent to take them.

Testifying in his own behalf, the appellant admitted that he operated the liquor store and that he maintained a locked room at the rear of the retail section where he often rested during the day and slept on week-ends. He further testified that he never saw Richard or the suit before the trial, and offered evidence that no consent was given the officers to search the premises.

It is not incumbent upon the state to show the receipt and concealment of all of the alleged stolen suits by other testimony than that of the accomplice, there being other testimony than that of the accomplice authorizing the finding that he received two of the suits, which the testimony shows were of the value of forty dollars each, thus evidencing proof on the part of the state of a felony. Kluting v. State, 90 Tex.Cr.R. 44, 232 S.W. 305; Hodges v. State, 143 Tex.Cr.R. 573, 160 S. W.2d 262.

The evidence is sufficient to warrant the jury's finding that the appellant had received two of the four men's suits belonging to Glenn D. McQuinn which were of the value of forty dollars each from Welmon Richard, Jr., knowing that they had been stolen at the time he received them, and the testimony of Richard is sufficiently corroborated, and all the evidence is sufficient to support the conviction.

The judgment is affirmed.

ONION, Judge (dissenting).

I respectfully dissent. As I view the record, the search and seizure here involved was unreasonable in violation of the Fourth Amendment, United States Constitution and Article I, Sec. 9, Texas Constitution, Vernon's Ann.St.; See also Article 1.06, V.A.C.C.P. Therefore, the fruits of the warrantless search were inadmissible and their admission, over objection, calls, in my opinion, for reversal.

Officer Cantrell of the Burglary and Theft Detail of the Dallas Police Department testified that after talking to the alleged thief, he went to the Wine Stop Liquor store at 2608 Bexar Street in the City of Dallas near 5 p. m. on September 15, 1966, for the purpose of conducting the

search in question. The record shows that the premises in question were "licensed premises" within the meaning of the Texas Liquor Control Act (Article 666–1, V.A. P.C.).

Cantrell testified that his purpose in going to the premises in question was solely to look for suits stolen from the J. C. Penney store; that he did not have a warrant and did not try to get one; that he did take the alleged thief before a magistrate (see Article 15.17, V.A.C.C.P.) prior to the search but that he did not attempt to secure a search warrant from such magistrate since he was a City Corporation Court Judge and did not have such authority;[1] that he knew he did not need a warrant since his authority was the state liquor law which authority he had used many times before; that no liquor law violations on the premises in question had been reported to him; that he did not go for the purpose of looking for liquor law violations and that after arriving he did not observe any liquor law violations.

Cantrell acknowledged that after entering the retail section of the building which was open for business he went along a hall to a room with a locked door not open to the public which lock he "forced" or "jimmied" with his pocket knife. Therein he found the man's suit and tag offered in evidence and a bed and other items described in the majority's opinion. The appellant was not present at the time and no arrest was made before or after the search in question.

The majority upholds the search in question by virtue of the authority of Article 666–13(d), V.A.P.C., which reads as follows:

"It is expressly provided that the acceptance of a permit or license issued under either Article I or Article II of this Act shall constitute an express agreement and consent on the part of the permittee or licensee that the Board, any of its authorized representatives, or any peace officer shall have at all times the right and privilege of freely entering upon the licensed premises for the purpose of conducting any investigation or for inspecting said premises for the purpose of performing any duty imposed by this Act upon the Board, its representative, or any peace officer."

Article 666–20, V.A.P.C., relating to the issuance of search warrants, also reads in part:

"All such alcoholic beverages and articles shall be seized by the officer executing the warrant and shall not be taken from the custody of any officer by writ of replevin nor any other process but shall be held by such officer to await final judgment in the proceedings. It is not intended by the provisions of this Section that a search warrant shall be required for any peace officer or any agent, representative, or inspector of the Board to search any premise covered by any permit or license under the provisions of this Act. Acts 1935, 44th Leg., 2nd C.S., p. 1795, ch. 467, Art. 1, § 20, added Acts 1937, 45th Leg., p. 1053, ch. 448, § 25."

In Plainos v. State, 131 Tex.Cr.R. 516, 100 S.W.2d 367; Plainos v. State, 132 Tex. Cr.R. 110, 102 S.W.2d 217; Kelley v. State, 133 Tex.Cr.R. 180, 109 S.W.2d 482 and in Hines v. State, Tex.Cr.App., 362 S.W.2d 652, the right of a peace officer to make a warrantless search of the licensed premises was upheld. Cf. Rone v. State, 132 Tex.Cr.R. 23, 101 S.W.2d 1017. In each case, however, the violation involved was that of the Texas Liquor Control Act and the search was conducted for the purpose of enforcing that law. I have no quarrel with the soundness of these decisions. I fully agree that the acceptance of a license or permit under the Texas Liquor Control

---

1. Officer Cantrell was in error. Article 2.-09, V.A.C.C.P., provides that "judges of the city courts of incorporated cities or towns" are magistrates and magistrates may issue search warrants. Article 18.01, V.A.C.C.P.

Act is an implied consent to such inspection and visitorial examination as is required for the purpose of enforcing that act and is an implied waiver of the constitutional immunity to that extent, but to that extent only.

The first Plainos case and the Kelley case, supra, were quoted with approval in Schepps v. State, Tex.Cr.App., 432 S.W.2d 926, 931. There the authority granted Liquor Control Board Inspectors by Article 666-13(d), supra, was favorably compared with the authority granted to the Comptroller and his employees and assistants under Articles 7.27 and 7.01 of Title 122A, V.A.T.S. Nothing in Schepps suggests, however, that such statutes authorized any police officer to enter upon the premises of any person licensed by the State Comptroller as a tobacco distributor for the purpose of "any investigation" or for the purpose of a general and exploratory search unrelated to the purposes of the statute.

In Brown v. State, Tex.Cr.App., 391 S.W.2d 425, the defendant was convicted of unlawful possession of barbiturates. There, for the first time, this court interpreted Article 666-13(d), supra, as authorizing a search of licensed premises for violations other than liquor law violations. The search in Brown was, however, held equally sustainable as a result of the consent to search which was given at the time of the search. In the case at bar there is no question of such consent since even Cantrell admitted that the employee on duty questioned his authority to enter the locked room.

In Brown, it is observed that to reach the desired effect the opinion quotes Article 666-13(d) out of context. The majority in the case at bar utilizes the same approach in its final conclusion that the acceptance of liquor license or permit constitutes an intelligent, voluntary and knowing waiver of the constitutional right against all unreasonable searches and seizures, at any time of the day or night, whether related to regulation of the liquor law or not. They, too, quote Article 666-13(d), supra, out of context in support of such conclusion.[2] In my humble opinion, the majority paints with too broad a brush in its decision of waiver.

It appears to be the majority's position that a licensee or permittee relinquishes certain constitutional guarantees and agrees to submit to all police searches even though not essential to the purpose of the Texas Liquor Control Act, and that the scope of the authority of the searching officer is not limited. The majority thus grants to all peace officers a blank form of a general warrant to search all licensed premises at any time *under any circumstances* eliminating the necessity of ever obtaining in advance judicial approval of searches and seizures through the warrant procedure.

Does this broad waiver or assent upon the acceptance of a license or permit under the Texas Liquor Control Act waive the constitutional rights of others such as managers and employees? May customers and patrons on such licensed premises be searched? I think not. See Davids v. State, 208 Md. 377, 118 A.2d 636; Mason v. Wrightson, 205 Md. 481, 109 A.2d 128. The licensee in question was the appellant's brother, Eugene Clark, not the appellant who was the manager of the store and used the room in question to rest during the

2. In Tucker v. State, 244 Md. 488, 224 A.2d 111, relied upon by the majority, it is observed that the officers entered the licensed premises by virtue of a search warrant, unlike the case at bar. Tucker attacked the search warrant since it authorized a search of the entire premises whereas the statements intended to constitute probable cause for the issuance of the search warrant were directed to one room only. In upholding the search the court pointed out that the heroin was, in fact, found in the single room described in the supporting affidavit. Only in disposing of one of Tucker's contentions did the Maryland Court mention the state's statute authorizing the inspection and warrantless search of licensed premises. Such statute (Article 2b, Sec. 190) is not at all worded like the Texas statute.

day and as sleeping quarters on weekends. The majority does not discuss, however, appellant's standing to complain or the effect upon him of the third party's implied consent to search. Cf. Mancusi v. De Forte, 392 U.S. 364, 88 S.Ct. 2120, 20 L.Ed.2d 1154.

I cannot conclude in considering the entire Texas Liquor Control Act in context that it was the legislative intent in enacting Articles 666–13(d) and 666–20, supra, to authorize any peace officer, at any time, to conduct without a warrant a search of licensed premises unlimited in scope and regardless of whether the conditions are reasonable or unreasonable for a purpose totally unrelated to the Texas Liquor Control Act. Cf. State of Iowa v. Union Asphalt and Roadoils, Inc., D.C., 281 F.Supp. 391. As I read the statute, the authorization of any investigation or inspection is "for the purpose of performing any duty imposed by this Act upon the Board, its representative, or any peace officer."

If I be wrong as to the legislative intent, then I think a serious question of the constitutionality of such statutes is involved insofar as they authorize a warrantless search in connection with just "any investigation."

Camara v. Municipal Court, 387 U.S. 523, 530, 87 S.Ct. 1727, 18 L.Ed.2d 930, and See v. City of Seattle, 387 U.S. 541, 87 S. Ct. 1737, 18 L.Ed.2d 943, extended Fourth Amendment protections to administrative searches. In Camara the court expressly limited its decision to "searches of the kind at issue here" meaning, as I take it, searches conducted pursuant to broad grants of authority rather than narrow warrants. The majority opinion in both Camara and See observed that warrantless searches are still permitted "in certain carefully defined classes of cases," the standard being whether the burden of obtaining a search warrant is likely to frustrate the governmental purpose behind the search. The court explicitly stated that it did not question the regulation of licensing programs by inspec-

tion. See People v. White, 259 Cal.App.2d Supp. 936, 65 Cal.Rptr. 923.

It would thus appear that the door was left open to warrantless administrative searches in those special situations where protection against excessive intrusion upon the individual's privacy could be reasonably assured and the objectives demanded by the public interest would be frustrated if the inspectors were required to obtain warrants. See Colonnade Catering Corp. v. United States, 2 Cir., 410 F.2d 197.

If Article 666–13(d), supra, is to be given the construction contended by the majority, it would authorize the broad type of search condemned in the Camara and See cases. Under the majority's interpretation any peace officer may enter licensed premises at any time for the purpose of making "any investigation" or for making general and exploratory searches without warrants, whether related to the Texas Liquor Control Act or not. The scope of the permissible intrusion is not therefore carefully restricted. Further, the search victim or victims have no way of knowing the lawful limits of the officer or whether the officer was acting properly. Liquor dealers know that they are engaged in a heavily regulated business, have accepted the regulations, and usually are aware of liquor law regulations to which they are subject, but they cannot be aware of all other purposes for which officers may search. Certainly it cannot be said that the statutes here involved impose restrictions that a warrant operates to impose in other searches.

Therefore, in my opinion, the lack of a warrant rendered the search in question unreasonable and fruits thereof inadmissible. In my opinion Officer Cantrell exceeded the statutory authority conferred and the statute cannot and should not be used to immunize his action. It should be borne in mind that we are not here dealing with a situation where an officer is lawfully in a place where he has a right to be and observed evidence of crime in plain view or where in the process of a valid inspection or

search for the purpose of enforcing the Texas Liquor Control Act he observes evidence of another crime.

For the reasons stated, I dissent.