STATE of Missouri (Plaintiff), Respondent,

v.

Patricia RUSSO (Defendant), Appellant.

No. 9122.

Springfield Court of Appeals,
Missouri.

Aug. 3, 1971.

John C. Danforth, Atty. Gen., Richard
L. Wieler, Asst. Atty. Gen., Jefferson
City, for respondent.

Morgan M. Moulder, Camdenton, for
appellant.

TITUS, Presiding Judge.

As an "officer, agent, or employee" of
a corporation licensed to sell nonintoxicat-
ing beer at retail, defendant was convicted
by a jury of the misdemeanor of keeping,
secreting or otherwise possessing a quanti-
ty of intoxicating liquor on or about the
licensed premises and her punishment was
fixed at a fine of $50. §§ 312.430 and 312.-
490.[1] Upon the assumption that a construc-
tion of the constitution was involved with-
in the meaning of art. V, § 3, Constitution
of Missouri, V.A.M.S., defendant first ap-
pealed to the Supreme Court, but that
court found it was without jurisdiction to
entertain the appeal and transferred the
cause here. State v. Russo, Mo., 463 S.W.
2d 832.

The permit premises, located in a resort
area, consists of a combination restaurant-
bar. Defendant is managing officer of the
family owned corporation. Her three
minor children assist with food preparation

---

1. Statutory references are to RSMo 1969,
V.A.M.S.; references to rules are to
Missouri Supreme Court Rules of Crim-
inal Procedure, V.A.M.R.

and table waiting. According to defendant, "the biggest majority of the people" who patronize the establishment "are repeaters" and "a lot of them serve their ownselves—they have access behind the bar, they serve their own beer and let [defendant] go ahead with the kitchen work." Two agents of the supervisor of liquor control[2] went to the permit premises on the night in question. They testified that while seated at a table they saw a customer go behind the bar and obtain a bottle of Seagrams VO off the floor; the customer mixed himself a drink from the bottle and then replaced the bottle on the floor. Following this occurrence, the agents said they moved to the bar and "by leaning forward" one of the agents observed "three four-fifth bottles [of liquor] on the floor behind the bar." A subsequent analysis of the contents of these bottles revealed that each held a beverage containing in "excess of three and two-tenths percent of alcohol by weight," which qualified the contents as "intoxicating liquor." § 311.020. The agents recounted that while they were sitting at the bar the defendant, who previously had been "in and out of the back of the bar" on numerous occasions, went "behind the bar * * * got a glass and picked up a bottle from the floor labeled vodka and poured the contents of that bottle into a glass and added what appeared to be juice." Defendant, so the agents recalled, then served the drink to a customer and went into the kitchen. By moving to the "open end of the bar," the agents said the three liquor bottles were plainly visible, and that while one of them remained at the end of the bar, the other went behind the bar and "picked up the three bottles in question." The agents asserted they then summoned the defendant, identified themselves to her, and advised her of the violation they had discovered. Defendant was not arrested and, as undisputed,

neither agent had a search warrant. After a brief conversation with defendant, the agents departed with the bottles and were followed by "one or more" of the customers who claimed ownership of the liquor.

Defendant and her children disavowed any knowledge that intoxicating liquor had ever been on the licensed premises; defendant disclaimed ownership and possession of the three bottles and denied that she had at any time served "anybody any vodka." She likewise disputed the agents' testimony concerning their conversation with her and stated that the first time she had "actually seen" the three bottles was at the trial, although she had seen one of the agents with "a bottle or two in his hands" when he "came from behind the bar." On cross-examination and without objection, defendant admitted that "before the [State Liquor] Board * * * I pled guilty [the bottles] were on the premises," adding that she had "witness to, as to whose bottles they were."

■ Through her pretrial motion and continuing objections, defendant has preserved her appeal contentions that the trial court erred in not suppressing and by admitting into evidence as exhibits and testimony, the bottles of liquor and the witnesses' statements relative thereto, "all procured by unlawful search and seizure." But in view of defendant's denial of any interest (possessory or otherwise) in the bottles of intoxicants, the question of her "standing" to object to their seizure immediately comes to mind. Crim.Rule 33.03. Where one without possession or the right of possession disclaims any interest in the articles seized, he is not "a person aggrieved" who may effectively complain of the unlawfulness of the seizure. Parr v. United States, 5 Cir., 255 F.2d 86, 89(5), cert. denied, 358 U.S. 824, 79 S.Ct. 40, 3 L.Ed. 2d 64; 79 C.J.S. Searches and Seizures

2. These were not "special agents" under § 311.630, subd. 1, and were not, therefore, "peace officers of the state of Missouri, with full power and authority to make arrests only for violations of the provisions of chapters 311 and 312, RS Mo, relating to intoxicating liquors and nonintoxicating beer, and to make searches and seizures thereunder, and to serve any process connected with the enforcement of such laws."

§ 60, p. 816. However, when possession of the seized evidence is itself an essential element of the offense with which the defendant is charged, the state is precluded from denying that the defendant has the requisite possessory interest to challenge the admission of the evidence. Simmons v. United States, 390 U.S. 377, 390, 88 S.Ct. 967, 19 L.Ed.2d 1247, 1256–1257(11); Jones v. United States, 362 U.S. 257, 263–264, 80 S.Ct. 725, 4 L.Ed.2d 697, 703–704 (6), 78 A.L.R.2d 233, 240–241(6). We proceed, therefore, on the assumption (as opposed to a decision) that defendant had "standing" to pose the objections raised in her points.

■ Constitutional immunities from search are waived to a limited extent by those who engage in a business regulated by law. Bowles v. Curtiss Candy Co., W. D.Mo., 55 F.Supp. 527, 531(12). A person or corporation who becomes a permittee of the State of Missouri to conduct the business of selling nonintoxicating beer, necessarily does so subject to the provisions of Chapter 312 which extends to the "supervisor of liquor control, his assistants, deputies, special agents, agents and inspectors, * * * the authority to inspect all premises covered by permit or license * * * to see that provisions of this chapter are being obeyed." § 312.290. By securing a permit or license issued under Chapter 312 and by electing to operate under the act, the permittee may be said to have waived the constitutional protection, if any, as to the right to search the premises and seize property if found to be in violation of the law. Clark v. State, Tex.Cr.App., 445 S.W. 2d 516, 517–519(1); Hurless v. Department of Liquor Control, Ohio App., 136 N.E.2d 736, 737(7), appeal dismissed, 164 Ohio St. 492, 132 N.E.2d 107; 79 C.J.S. Searches and Seizures § 62a, pp. 816–820. Moreover, it has been held that no unreasonable seizure was involved when inspectors, making an authorized inspection, discover a violation of the law and take into their custody the incriminating evidence discovered through the inspection. United States

v. Rabicoff, W.D.Mo., 55 F.Supp. 88, 89–90(3). It must also be remembered that the restaurant-bar was a public place and that the law of search and seizure does not require a search warrant or special permission to enter premises open to the public (Gerard v. State, 237 Ark. 287, 372 S.W. 2d 635, 637(2); Reinhart v. State, 193 Tenn. 15, 241 S.W.2d 854, 855(3); Carroll v. State, 189 Tenn. 351, 225 S.W.2d 532–533(1, 2); 79 C.J.S. Searches and Seizures § 9, p. 788), "[f]or the Fourth Amendment protects people, not places. What a person knowingly exposes to the public, even in his own home or office, is not a subject of Fourth Amendment protection." Katz v. United States, 389 U.S. 347, 351, 88 S.Ct. 507, 511, 19 L.Ed.2d 576, 582(4).

In our opinion the agents had a right to be on the permit premises both because of the authority extended under § 312.290, supra, and because it was a public place. If the testimony of the agents is correct, two of the bottles seized were publicly displayed and exposed to the open and plain view of the agents when they were taken off the floor from behind the bar by the customer and the defendant. Licerio v. State, Tex.Cr.App., 456 S.W.2d 96. Objects falling within plain view are not the product of a search and are subject to seizure and may be introduced into evidence. Harris v. United States, 390 U.S. 234, 236, 88 S. Ct. 992, 19 L.Ed.2d 1067, 1069(3); United States v. Campbell, D.C.S.C., 275 F.Supp. 7, 10(3), aff'd 4 Cir., 395 F.2d 848, cert. denied, 393 U.S. 834, 89 S.Ct. 106, 21 L.Ed. 2d 105. The agents were free to observe evidence and circumstances that were in plain view to the public. Neither does it matter that one of the agents "by leaning forward" while seated at the bar observed the three bottles which were seized. "That the policeman may have to crane his neck, or bend over, or squat, does not render the [plain view] doctrine inapplicable, so long as what he saw would have been visible to any curious passerby." James v. United States, 135 U.S.App.D.C. 314, 418 F.2d 1150, 1151(1). While this is not the dis-

positive issue here, we felt compelled to rule it as the same matter is likely to recur upon retrial of the cause which is herein ordered.

 In her appeal brief, as well as in her motion for new trial, defendant asseverates that the trial court erred in refusing to give her proffered Instruction No. B on the question of defendant's good character. The state neither challenges the form of the requested charge nor denies that there was substantial evidence of defendant's good reputation. Rather, it contents itself, without citation of authority save Crim. Rule 26.02(6),[3] with the one sentence argument that "Inasmuch as the present case involves a misdemeanor, failure to instruct the jury as to the question of good character is not good cause for setting aside the verdict of guilty." In Crim. Rule 26.02(6) and § 546.070(4), the words "whenever necessary," as they relate to good character, mean whenever there is any substantial evidence of defendant's general reputation for good character. The reason for the rule is that proof of the defendant's good character (which is not a collateral issue, State v. Demaree, Mo. (banc), 362 S.W.2d 500, 508, 17 A.L.R.3d 312, 325) is considered some proof of defendant's innocence; that is, to show the improbability of her having committed the crime charged. When a defendant is charged with a felony and has adduced substantial evidence of good character, he is entitled to a good character instruction whether he requests it or not, and a court's omission to give such an instruction is prejudicial error. State v. Woods, Mo., 428 S.W.2d 521, 523; State v. Jackson, Mo., 373 S.W.2d 4, 7(1, 2); State v. Jackson, Mo., 369 S.W.2d 199, 205–206(3); 23A C.J.S.

Criminal Law § 1325(5), at pp. 849–850. However, it has been held that § 546.070 (4), which is similar to Crim. Rule 26.02 (6), has no application in a misdemeanor case [State v. Katz Drug Company, Mo. App., 362 S.W.2d 80, 83(4)], and that a defendant on appeal cannot successfully complain of a trial court's alleged error in failing to instruct the jury on all essential issues in a misdemeanor case *in the absence of a request for such an instruction.* State v. Egan, Mo.App., 272 S.W.2d 719, 727 (22). It is a fallacious attempt at simplification to state that a defendant in a misdemeanor case is not entitled to an instruction on the subject of good character merely because Crim. Rule 26.02(6) may not be applicable. Although it has long been the rule that a defendant charged with a misdemeanor cannot complain of simple nondirection in the absence of a request (State v. Matheis, 49 Mo.App. 237, 240), nondirection will work to set aside a verdict of guilty when it appears that the court refused to give a requested legal instruction on points not covered in the charges given by the court. State v. Burgess, Mo.App., 456 S.W.2d 641, 643.

It is revealed by the record that the jury, following deliberation, returned to the courtroom without a verdict. One of the jurors inquired as to "How long does this go on if we can't come to an agreement?" which prompted the court to give a so-called "hammer" instruction, concerning which defendant also now complains. Thereafter, the jury again retired and deliberated further before arriving at a decision. We do not conjecture if the absence of a good character instruction contributed to the apparent difficulty encountered by the jury in reaching a verdict. Nevertheless, there is no direct limitation on the ex-

3. Crim. Rule 26.02(6) states: "In all criminal cases the court, whether or not it shall have been requested so to do by either party, must instruct the jury in writing upon all questions of law necessary for their guidance in returning their verdict which shall include whenever necessary the subjects of good character and reasonable doubt. In all felony cases failure so to instruct shall be good cause for setting aside a verdict of guilty by the jury and granting a new trial." (The words "In all criminal cases" do not appear in § 546.070(4). We do not undertake to determine the significance, if any, of this addition by the Supreme Court.)

tent to which a jury may consider a defendant's good character in arriving at the ultimate fact of guilt or innocence. The subject of good character may be of great importance in a cause and it would be pure speculation on the part of anyone to say whether or not the absence of a good character instruction was a deciding factor in this case. In any event, we are in no position to say that refusal of the good character instruction requested by the defendant was not prejudicial.

For error in failing to instruct on the subject of good character *when such an instruction was requested by the defendant*, the judgment is reversed and the case remanded for a new trial. Other alleged errors may not recur upon retrial and need not now be ruled.

STONE and HOGAN, JJ., concur.