168 N.J. Super. 359 (1979)
403 A.2d 31
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
CARY WILLIAMS, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued March 26, 1979.
Decided May 22, 1979.
Before Judges CONFORD, PRESSLER and KING.
Mr. Frank T. Simeone argued the cause for appellant (Messrs. Goodman, Rothenberg & Galluccio, attorneys).
*360 Mr. Simon Louis Rosenbach, Deputy Attorney General, argued the cause for respondent (Mr. John J. Degnan, Attorney General, attorney).
The opinion of the court was delivered by KING, J.A.D.
This case raises the question of whether law enforcement officers may search the non-public areas of a licensed tavern for evidence of general criminality, unrelated to the operation of the licensed activity, without a search warrant.
Appellant Cary Williams was indicted on November 4, 1976, with several others, for possession of lottery paraphernalia (N.J.S.A. 2A:121-3(b)); working for a lottery (N.J.S.A. 2A:121-3(a)); receiving stolen property (N.J.S.A. 2A:139-1); and possession of revolvers without a permit (N.J.S.A. 2A:151-41(a)). After denial of his timely motion to suppress, R. 3:5-7, Williams was found guilty on November 3, 1977 of all charges except that of receiving stolen property. Following imposition of a custodial sentence Williams appeals, alleging violation of his rights under the Fourth Amendment to the Federal Constitution.
These are the facts pertinent to the legality of the search and seizure. On January 22, 1976 Detectives Giordano and Zdanis of the Paterson Police Department went to a tavern located at 54 Washington Avenue in Paterson. Their purpose was to investigate concerning a stolen CB radio following a "tip" from an unidentified source received two days before. The detectives had no search warrant. There was no attempt at the trial level to suggest exigent circumstances.
At about 11 A.M. the two detectives entered the tavern and identified themselves to the bartender as local police officers. Detective Zdanis immediately went behind the bar and opened a trap door which led to the basement. Detective Giordano searched the public area of the bar. Upon reaching the cellar area Zdanis observed three males inside a small (8' x 8') storage room in the basement. One of the men was defendant Williams. Zdanis observed in open view several stacks of *361 money, tally sheets, a strongbox and two hand guns. Further search revealed a stolen CB radio. The detectives then summoned the vice squad and the observed items were seized, including $29,807.40 in cash. Several lottery slips were also found on one of Williams' coindictees.
Defendant Williams lived in an apartment above the bar with his wife and children. He was the custodian of the entire building, responsible for cleaning and maintenance, and had the right of access to the tavern's basement and storage room where he kept tools. The room where the illegal gambling activity was observed and the physical evidence was seized was also used for storage of liquor. It was clearly a part of the licensed premises.
Preliminarily, we hold that under our cases defendant Williams, although not the owner of the tavern, has requisite standing to voice the claim of an illegal search and seizure. He was a resident of the licensed premises. He had right of access to the storage area and kept personal property there. The basement was not a public area and defendant's presence was neither casual nor transient. His interest was personal and his expectation of privacy from a general warrantless search real. See State v. Parker, 153 N.J. Super. 481, 488 (App. Div. 1977); State v. LaDuca, 89 N.J. Super. 159, 163 (App Div. 1965). Cf. Rakas v. Illinois, ___ U.S. ___, 99 S.Ct. 421, 58 L.Ed.2d 387 (1978).
The State contends that the warrantless search was authorized by the statutes regulating the sale of alcoholic beverages, specifically N.J.S.A. 33:1-35, and by our holding in State v. Zurawski, 89 N.J. Super. 488 (App. Div. 1965), aff'd o.b. 47 N.J. 160 (1966). N.J.S.A. 33:1-35 provides in pertinent part as follows:
The Director of the Division of Alcoholic Beverage Control and each other issuing authority may make, or cause to be made, such investigations as he or it shall deem proper in the administration of this chapter and of any and all other laws now or which may hereafter be in force and effect concerning alcoholic beverages, or the manufacture, distribution or sale thereof, or the collection of taxes thereon, *362 including the inspection and search of premises for which the license is sought or has been issued, of any building containing the same, of licensed buildings, examination of the books, records, accounts, documents and papers of the licensees or on the licensed premises.
Every applicant for a license, and every licensee, and every director, officer, agent and employer of every licensee, shall, on demand, exhibit to the director or other issuing authority, as the case may be, or to his or its deputies or investigators, or inspectors or agents all of the matters and things which the director of the division or other issuing authority, as the case may be, is hereby authorized or empowered to investigate, inspect or examine, and to facilitate, as far as may be in their power so to do, in any such investigation, examination or inspection, and they shall not in any way hinder or delay or cause the hindrance or delay of same, in any manner whatsoever. Investigations, inspections and searches of licensed premises may be made without search warrant by the director, his deputies, inspectors or investigators, by each other issuing authority and by any officer. [Emphasis supplied]
The "issuing authority" alluded to in the statute is the municipal entity issuing the license. The statute thereafter specifically grants authority to an authorized investigator to inspect and examine all "books, records, accounts, documents and papers" in any way relating to the licensed business. The legislative intent for broad regulatory power is manifested by the statement, "the above enumerations of purposes and powers shall not be construed as exclusive and shall not limit such power to investigate, examine and subpoena for any purpose consonant with the administration and enforcement of this chapter." Ibid.
The State also adverts to the regulations of the Division of Alcoholic Beverage Control which prohibit any illegal activity and, specifically, illegal gambling, on a licensed premises, as justification for the unwarranted search. The regulations state:

N.J.A.C. 13:2-23.5(c).
No licensee shall allow, permit or suffer the licensed premises to be accessible to any premises upon which any illegal activity or enterprise is carried on, or the licensed premises or business to be *363 used in furtherance or aid of or accessible to any illegal activity or enterprise.

N.J.A.C. 13:2-23.7(a).
No licensee shall engage in or allow, permit or suffer in or upon the licensed premises:
1. The conduct of any lottery;
2. Any ticket or participation right in any lottery to be sold or offered for sale;
3. Any pool-selling, bookmaking or any unlawful game or gambling of any kind;
4. Any slot machine or device in the nature of a slot machine which may be used for the purpose of playing for money or other valuable thing;
5. Nor shall any licensee possess, have custody of, or allow, permit or suffer in or upon the licensed premises any slip, ticket, book, record, document, memorandum or other writing pertaining in any way to any lottery, pool-selling, bookmaking or unlawful game or gambling of any kind.
Additionally, in support of the detectives' right to search without a warrant the trial judge relied upon the consent provision of the application for the license executed by Joyce Waller, the principal of the corporate owner of the licensed premises and defendant's sister, which stated:
The applicant agrees, if license is issued, to abide by and comply with the provisions of R.S. Title 33, c. 1, and any rules and regulations promulgated heretofore and hereafter by the Director of the Division of Alcoholic Beverage Control pursuant thereto, and with the provisions of all duly enacted municipal ordinances and resolutions.
The applicant consents that the licensed premises and all portions of the building containing same, including all rooms, cellars, outbuildings, passageways, closets, vaults, yards, attics, and every part of the structure of which the licensed premises are a part and all buildings used in connection therewith which are in his possession or under his control, may be inspected and searched without warrant at all hours by the Director of the Division of Alcoholic Beverage Control, the Director of the Division of Taxation, their duly authorized inspectors, investigators and agents and all other officers.
In State v. Zurawski, supra, defendant tavern owner was convicted of bookmaking and appealed from the denial of his *364 motion to suppress evidence seized by the local police without a search warrant. In that case three detectives of the local police department entered defendant's tavern at about 1 P.M. One of the detectives told defendant that they were making an inspection on behalf of the municipal alcoholic beverage control board. Their warrantless search uncovered lottery slips in the pantry and the kitchen of the licensed premises. This court in Zurawski held that N.J.S.A. 33:1-35 authorized the warrantless search. Reliance was also placed on defendant owner's written consent to search, contained in the application for a license, and the specific prohibition against possession of lottery tickets on a licensed premises in the Director's regulations. This court there concluded that the regulatory demands of the alcoholic beverage business, one "so prone to evils," justified the warrantless search of the premises. We do not disagree with the result in Zurawski but do not find it controlling on the facts of the present case.
We conclude that Zurawski can only be read as justifying a warrantless search of a licensed premises by local police when they are specifically engaged in an investigation as part of their enforcement duties under the alcoholic beverage control laws. In sum, it condones a warrantless search specifically aimed at uncovering forbidden gambling activity on the licensed premises undertaken pursuant to the authority of the alcoholic beverage regulatory statute, conforming to the licensee's prior written consent, and undertaken on behalf of the local liquor law enforcement authority, as constitutionally tolerable.
Although casual comparison would suggest that the net result in Zurawski and the present case should be identical  a warrantless search of a nonpublic area of a licensed premises by local police which turns up lottery paraphernalia  we conclude that the present case implicates constitutional considerations dictating a contrary result. The police in the present case were engaged in an investigation directed towards uncovering evidence of general criminality, trafficking *365 in stolen goods, as part of their regular police duties. They neither claimed nor intended that their investigative search and consequent seizure was within regulatory measures directed against the licensee. Cf. State v. Ercolano, 79 N.J. 25, 37-41 (1979).
For the result urged by the State to prevail we would be required to conclude that a licensed premises never enjoys any measure of constitutional protection under the Fourth Amendment. We do not think the Legislature so intended. The investigative and search power bestowed on the Director of the Division of Alcoholic Beverage Control, and those officers acting on his or the issuing authority's behalf, was limited to undertakings "deem[ed] proper in the administration of this chapter and of any and all other laws now or which may hereafter be in force and effect concerning alcoholic beverages, or the manufacture, distribution or sale thereof." N.J.S.A. 33:1-35. The grant was not without limit or unqualified. We acknowledge that the liquor industry has historically been closely scrutinized for law compliance and is for regulatory purposes considered outside the Warrant Clause of the Federal Constitution.
In the only case decided by the United States Supreme Court concerning the liquor industry and the Fourth Amendment, Justice Douglas noted in the majority opinion that the government "has broad power to design such powers of inspection under the liquor laws as it deems necessary to meet the evils at hand." Colonnade Catering Corp. v. United States, 397 U.S. 72, 76, 90 S.Ct. 774, 777, 25 L.Ed.2d 60 (1970). In that case the court held that a fine was the exclusive sanction against a licensee who refused government agents entry for inspection, absent a warrant to break, enter and search. The court there observed that where the government "has authorized inspection but made no rules governing the procedure that inspectors must follow, the Fourth Amendment and its various restrictive rules apply." Id at 77, 90 S.Ct. at 777. Clearly, licensed premises are therefore not per se exempt from the Fourth Amendment in all cases. *366 Nor would a blanket consent extracted from the licensee under the guise of uninhibited regulatory power constitute a valid waiver of constitutional rights in all instances. See State v. Johnson, 68 N.J. 349 (1975). As Colonnade points up, government does have "broad authority to fashion standards of reasonableness for searches and seizures," Ibid., but we conclude that when the search is no longer a regulatory measure but, as here, a search for evidence of general crime, the Fourth Amendment applies and a warrant is required, absent a valid exception to the Warrant Clause. State v. Blue, 75 N.J. 337, 351 (1978); Mincey v. Arizona, 437 U.S. 385, 98 S.Ct. 2408, 57 L.Ed.2d 290, 298-299 (1978).
The chance discovery of an illegal gambling operation by the detectives here is not alone sufficient to justify the search, although that activity was specifically prohibited by the Division's regulations. N.J.A.C. 13:2-23.7(a). We cannot indulge in such bootstrapping and thus attain an after-the-fact justification for the search. State v. Doyle, 42 N.J. 334, 342 (1962). The exclusionary rule as a constitutional principle is based on deterrence "`to compel respect for the constitutional guaranty in the only effectively available way  by removing the incentive to disregard it.'" Mapp v. Ohio, 367 U.S. 643, 656, 81 S.Ct. 1684, 1692, 6 L.Ed.2d 1081 (1961); State v. Ercolano, supra, 79 N.J. at 37-38. We are therefore governed by the intent of the officers as they entered the tavern, not what in retrospect they might have intended if they knew in advance the type of criminal activity they might chance upon. Ibid.
Our holding today restricting the right to search without warrant under N.J.S.A. 33:1-35 to legitimate regulatory inspections specifically related to enforcement of the liquor laws and regulations under Title 33 of our statutes preserves valid Fourth Amendment rights without impairing the regulation of a sensitive industry. Although we are fully aware that other courts have opted for the right of the state to conduct unbridled searches of licensed premises for any *367 reason under the guise of regulation, there is respectable authority for the contrary view:
But there are inspection systems, most notably under the almost universal statutory provisions for the inspection of premises licensed for the sale of alcoholic beverages, which has often been assumed to permit "inspections or investigations of a general nature." It has been held, for example, that liquor stores and taverns may be searched by the police without a warrant for evidence, including those  such as possession of stolen property  [citing Daley v. Berzanskis, 47 Ill.2d 395, 269 N.E.2d 716 (Sup. Ct. 1971); Clark v. State, 445 S.W.2d 516 (Tex. Cr. App. 1969)] which do not have any obvious connection with the sale of liquor. This result has been justified upon the conditional privilege and implied consent theories, which are unsound for the reasons stated earlier, and upon the notion that if a licensee may lose his license for the violation of any criminal statute then it follows that a search for any type of violation is a permissible part of the regulatory scheme. More consistent with the reasoning in [United States v. Biswell, 406 U.S. 311, 92 S.Ct. 1593, 32 L.Ed.2d 87 (1972)], however, is the proposition that "no state may require, as a condition of doing business, a blanket submission to warrantless searches at any time and for any purpose. [Citing Finn's Liquor Shop, Inc. v. State Liquor Authority, 24 N.Y.2d 647, 301 N.Y.S.2d 584, 249 N.E.2d 440, 445 (Ct. App. 1969)]." [3 LaFave, Search and Seizure (1978), § 10.2 at 237-238].
We conclude the sound view is to accommodate both the regulatory power to enforce the liquor laws and the citizen's rights under the Fourth Amendment where possible. Recent constitutional decisions have demonstrated disfavor for pervasive regulatory searches, unchecked by the Fourth Amendment. See Delaware v. Prouse, ___ U.S. ___, 99 S.Ct. 1391, 59 L.Ed.2d 660 (1979) (random vehicle stops); Marshall v. Barlow's, Inc., 436 U.S. 307, 98 S.Ct. 1816, 56 L.Ed.2d 305 (1979) (OSHA inspections); See v. Seattle, 387 U.S. 541, 87 S.Ct. 1737, 18 L.Ed.2d 943 (1967) (fire department inspections); Camara v. Municipal Court, 387 U.S. 523, 87 S.Ct. 1727, 18 L.Ed.2d 930 (1967) (building code inspections); Colonnade Catering Corp. v. United States, 397 U.S. 72, 90 S.Ct. 774, 25 L.Ed.2d 60 (1979) (liquor law inspections). See also, Michigan v. Tyler, 436 *368 U.S. 499, 98 S.Ct. 1942, 56 L.Ed.2d 486 (1978) (arson investigations); State v. Slockbower, 79 N.J. 1 (1979) (automobile inventory). Our decision today is in that spirit.
In view of our conclusion that the motion to suppress was improperly denied it is unnecessary to discuss the additional points raised by appellant.
Reversed.