STATE OF NEW JERSEY, PLAINTIFF-APPELLANT, v. CARY WILLIAMS, DEFENDANT-RESPONDENT.

Argued April 22, 1980—Decided August 5, 1980.

*Simon Louis Rosenbach*, Deputy Attorney General, argued the cause for appellant (*John J. Degnan*, Attorney General of New Jersey, attorney).

*Salvatore T. Alfano* argued the cause for respondent (*Miles Feinstein*, attorney).

The opinion of the Court was delivered by

POLLOCK, J.

The primary issue on this appeal is whether a warrantless search by local law enforcement officers of the nonpublic areas of a tavern was authorized under *N.J.S.A.* 33:1–35. If the search was unauthorized, then evidence obtained by the officers may be suppressed. The trial court denied a motion to suppress evidence found during the search. The Appellate Division reversed. *State v. Williams*, 168 *N.J.Super.* 359 (App. Div. 1979). We granted the State's petition for certification. 82 *N.J.* 268 (1979). We now affirm.

Under the facts of this case, we hold invalid the warrantless search of a tavern by local police for evidence of a crime where the search was not authorized as required by statute.

I

Two detectives of the Paterson police department entered a tavern in Paterson on January 22, 1976, at about 11:15 a. m. to search for a stolen citizens' band radio. One detective had received a tip about the radio from an informant two days earlier. Neither had a search warrant.

The detectives identified themselves to the bartender and proceeded to search the entire premises. One officer searched the public area of the tavern, and the other went into the basement through a trap door behind the bar. While in the basement, the second officer found three men in a small storage room at a table with stacks of money and some paper slips, which were apparently lottery tally sheets. He called his partner and summoned the vice squad for assistance. The officers

also found two loaded revolvers and a stolen citizens' band radio. Defendant Williams, one of the men in the basement, acknowledged ownership of the guns.

Williams lived in an apartment above the bar with his wife and children. The tavern was in a building owned by a corporation of which Williams' sister and her husband were the majority shareholders. Williams paid reduced rent in exchange for maintenance and cleaning of the entire building, including the furnace in the basement. He had access to the basement and storage room, where he kept tools.

Williams and the others were indicted for possession of lottery paraphernalia, *N.J.S.A.* 2A:121–3(b); working for a lottery, *N.J. S.A.* 2A:121–3(a); receiving stolen property, *N.J.S.A.* 2A:139–1; and possession of revolvers without a permit, *N.J.S.A.* 2A:151–41(a). After a hearing, the trial judge denied defendant's motion to suppress the evidence found at the tavern. He found that the warrantless search was authorized by *N.J.S.A.* 33:1–35 of the Alcoholic Beverage Control (ABC) laws. A jury found Williams guilty on all counts except receiving stolen property.

The Appellate Division reversed, finding that the officers were not conducting an ABC regulatory search. 168 *N.J.Super.* at 364–365. The court held that *N.J.S.A.* 33:1–35 authorizes warrantless searches only if they relate specifically to enforcement of the liquor laws and regulations. *Id.* at 366–367.

## II

■ The initial question is whether Williams has standing to argue that the police conducted an illegal search and seizure, an issue first raised by the State on appeal. The United States Supreme Court held in *Rakas v. Illinois*, 439 *U.S.* 128, 99 *S.Ct.* 421, 58 *L.Ed.*2d 387 (1978), that standing should be considered in conjunction with determining the substantive Fourth Amendment issue. The question thus becomes whether the search and seizure violated the Fourth Amendment rights of the person claiming the violation. *Id.* at 140, 99 *S.Ct.* at 429, 58 *L.Ed.*2d at 399. A search and seizure of premises or property of a third

person may not violate the Fourth Amendment rights of a defendant. *Id.* at 134, 99 *S.Ct.* at 425, 58 *L.Ed.2d* 395. However, a defendant need not be the owner of the premises: the test is whether a defendant had a legitimate expectation of privacy in the property or premises involved. *Id.* at 143, 99 *S.Ct.* at 430, 58 *L.Ed.2d* at 401. *See also United States v. Salvucci,* —— *U.S.* ——, 100 *S.Ct.* 2547, 65 *L.Ed.2d* 619 (1980) (overruling automatic standing doctrine for possessory offenses).

■ We find that Williams had a legitimate expectation of privacy in the storage room. The room was used for the storage of liquor and kept locked. Although part of the licensed premises, it was not a public area. Williams kept tools in the room, and as a resident and custodian, had access to it. Consequently, we hold that Williams has standing to challenge the search and seizure under the Fourth Amendment.

## III

We next consider whether the search was authorized in law or fact. The statute on which the officers relied, *N.J.S.A.* 33:1–35, provides in pertinent part:

> The Director of the Division of Alcoholic Beverage Control and each other issuing authority may make, or cause to be made, such investigations as he or it shall deem proper in the administration of this chapter and of any and all other laws now or which may hereafter be in force and effect concerning alcoholic beverages, or the manufacture, distribution or sale thereof, or the collection of taxes thereon, including the inspection and search of premises for which the license is sought or has been issued, of any building containing the same, of licensed buildings, examination of the books, records, accounts, documents and papers of the licensees or on the licensed premises.

> Every applicant for a license, and every licensee, and every director, officer, agent and employee of every licensee, shall, on demand, exhibit to the director or other issuing authority, as the case may be, or to his or its deputies or investigators, or inspectors or agents all of the matters and things which the director of the division or other issuing authority, as the case may be, is hereby authorized or empowered to investigate, inspect or examine, and to facilitate, as far as may be in their power so to do, in any such investigation, examination or inspection, and they shall not in any way hinder or delay or cause the hindrance or delay of same, in any manner whatsoever. Investigations, inspections and searches of licensed premises may be made without search warrant by the director, his deputies, inspectors or investigators, by each other issuing authority and by any officer.

Regulations of the Division of ABC provide that a licensee shall not permit gambling or a lottery on the premises, *N.J.A.C.* 13:2–23.7(a). There is no regulation prohibiting the receipt of stolen goods. However, there is a general prohibition against any illegal activity on the premises. *N.J.A.C.* 13:2–23.5(c).

The State argues that the statute authorizes warrantless searches in the enforcement of the alcoholic beverage control laws, and that enforcement includes the investigation of crimes by local police without express authorization by State or local ABC boards.

We begin our analysis of that position with the recognition that "the liquor industry is affected with a public interest" and "has been subject to intense State regulation and control . . . ." *Heir v. Degnan*, 82 *N.J.* 109, 114 (1980). *See also California v. LaRue*, 409 *U.S.* 109, 93 *S.Ct.* 390, 34 *L.Ed.*2d 342 (1972). Indeed, a state may prohibit liquor sales completely. *Gilhaus Beverage Co. v. Lerner*, 78 *N.J.* 499, 509 (1979). Historically, the liquor industry has been viewed as a sensitive industry and has been strictly regulated. *Id.* at 508–509.

In *Colonnade Catering Corp. v. United States*, 397 *U.S.* 72, 90 *S.Ct.* 774, 25 *L.Ed.*2d 60 (1970), the Supreme Court recognized the broad power of Congress to design appropriate powers of inspection with respect to the liquor industry. The relevant federal statute provided that a fine could be imposed on a licensee who refused to allow agents to inspect the premises. In *Colonnade*, the Court suppressed bottles of liquor removed by federal agents who broke into a locked liquor storeroom in a catering establishment. Although the Court held that the statute did not authorize the agents to use force to enter the premises when the licensee refused inspection, it impliedly recognized the power of Congress to authorize warrantless inspections. This power was confirmed in *United States v. Biswell*, 406 *U.S.* 311, 92 *S.Ct.* 1593, 32 *L.Ed.*2d 87 (1972), which involved a warrantless search by a federal treasury agent of the premises of a firearms dealer pursuant to the federal gun control act. In *Biswell*, a pawnshop operator acquiesced in a search of a locked

storeroom containing two sawed off shot guns. The Court distinguished *Colonnade* because the search was unaccompanied by unauthorized force. In recognizing that the firearms industry, like the liquor business, is a sensitive and highly regulated industry, the Court held inspections without warrants to be reasonable official conduct. *Id.* at 316, 92 *S.Ct.* at 1596, 32 *L.Ed.*2d at 92. *See also Dome Realty Inc. v. City of Paterson,* 83 *N.J.* 212, 239–241 (1980).

Recognition that the government may authorize warrantless searches of certain businesses does not end the inquiry. *Colonnade* and *Biswell* established that certain businesses such as the liquor and firearms industries are subject to governmental oversight to such an extent that anyone engaging in those businesses would have a reduced expectation of privacy. Nonetheless, persons engaged in those businesses remain entitled to protection of their limited expectation of privacy. Both cases involved inspections by government agents seeking evidence of substantive violations of relevant regulatory statutes. Neither case considered whether, without authorization from the relevant regulatory agency, a local law enforcement officer may search the premises of a regulated business for evidence of crimes.

More recently, the Court struck down a section of the Occupational Safety and Health Act (OSHA) that authorized federal agents to make warrantless searches of business premises for violations of the Act. *Marshall v. Barlow's, Inc.,* 436 *U.S.* 307, 98 *S.Ct.* 1816, 56 *L.Ed.*2d 305 (1978). In *Marshall,* which involved an electric and plumbing installation business, the Court was concerned with inspections by government agents for violations of specific regulations. The Court distinguished between closely regulated businesses, such as the liquor and firearms industries, and ordinary businesses. While requiring OSHA inspectors to obtain warrants, the Court approved warrantless searches of "closely regulated industry of the type involved in *Colonnade* and *Biswell* . . . ." 436 *U.S.* at 313, 98 *S.Ct.* at 1821, 56 *L.Ed.*2d at 312. The import of *Colonnade, Biswell,* and *Marshall* is that, although a warrant is not a condition precedent to a search of premises used for the sale of

liquor, someone with a legitimate expectation of privacy in the premises otherwise remains protected by the Fourth Amendment. We reject as unsound the notion that persons doing business in a strictly regulated industry such as the liquor business waive their Fourth Amendment rights. *See* 3 *LaFave, Search and Seizure,* § 10.2 at 237–238 (1978); *but see Daley v. Berzanskis*, 47 *Ill.*2d 395, 269 *N.E.*2d 716 (1971); *Clark v. State*, 445 *S.W.*2d 516 (Tex. Crim. Ct. 1969).

■ Within that matrix, we examine the statute and conduct of the police officers in this case. Here, the conduct constituted a warrantless search by local detectives for evidence of a crime. *N.J.S.A.* 33:1–35 authorizes the Director of the Division of ABC and local ABC boards to investigate licensed taverns. In this case, the persons who made the search were not agents of either the State or a municipal ABC board. They were policemen, and they were looking for a stolen C.B. radio. As disclosed at the suppression hearing, for two days the officers had known about the stolen radio. Without either a warrant or authorization, they searched a tavern. There was no reason for them not to obtain either a warrant or an authorization. They obtained neither. A local law enforcement officer who relies on the ABC laws for authority to make a warrantless search must be authorized expressly to conduct that search. The search was invalid. *See Biswell, supra*, 406 *U.S.* at 315, 92 *S.Ct.* at 1596, 32 *L.Ed.*2d at 92. Consequently, the state of mind of the officers is irrelevant. Therefore, it is not necessary to determine the subjective intent of the officers or the relevance of their intent. *See State v. Ercolano*, 79 *N.J.* 25, 38–40 (1979). *Cf. Scott v. United States*, 436 *U.S.* 128, 98 *S.Ct.* 1717, 56 *L.Ed.*2d 168 (1978) (objective test should be applied to determine if a search is valid).

Two Appellate Division decisions upholding warrantless searches of taverns are distinguishable. *State v. Zurawski*, 89 *N.J.Super.* 488 (App. Div. 1965), aff'd o. b. 47 *N.J.* 160 (1966), involved a search of a tavern by local detectives. On entering the tavern, the officers stated that they were conducting a search on behalf of the local ABC board. There was no dispute

that the search was authorized by the board. In the present case, the officers had no ABC authorization. In *State v. Ransom,* 169 *N.J.Super.* 511 (App. Div. 1979), police, acting on a tip, went to a tavern in search of cocaine. Although the court thought the search was authorized by *N.J.S.A.* 33:1–35, it expressly held that the search was reasonable in light of exigent circumstances, the lack of time available to obtain a warrant. 169 *N.J.Super.* at 519. As previously noted, the police in this case had two days in which to obtain a warrant.

■ We conclude that there is no statutory authority for a warrantless search of a tavern by local law enforcement officers conducting their own investigation of a crime without specific authorization. Further, we conclude that the issuing authority in this case, the Paterson Alcoholic Beverage Control Board, had not authorized the search and that the police officers were not making an investigation while enforcing ABC laws.

## IV

Because we hold that the search was not statutorily authorized, we must consider whether valid consent was given for the search. Two questions are presented. First, whether the licensee consented to all searches by applying for a license. Second, whether the bartender consented to the search of the premises and, if so, whether the consent is binding on Williams.

■ The consent provision in the license application provides:
The applicant consents that the licensed premises and all portions of the building containing same, including all rooms, cellars, out-buildings, passageways, closets, vaults, yards, attics, and every part of the structure of which the licensed premises are a part and all buildings used in connection therewith which are in his possession or under his control, may be inspected and searched without warrant at all hours by the Director of the Division of Alcoholic Beverage Control, the Director of the Division of Taxation, their duly authorized inspectors, investigators and agents and all other officers.

Although more specific than the statute, the consent form is coextensive with *N.J.S.A.* 33:1–35. Nothing indicates that the form was intended to allow searches other than those authorized by the statute. By filing an application, the licensee consented only to searches that are authorized. As the Court stated in

*Biswell*: "In the context of a regulatory inspection system of business premises that is carefully limited in time, place, and scope, the legality of the search depends not on consent but on the authority of a valid statute." 406 *U.S.* at 315, 92 *S.Ct.* at 1596, 32 *L.Ed.*2d at 92.

■ The remaining question is whether the bartender consented to the search. There is no proof of facts surrounding the consent allegedly given by the bartender. The only relevant evidence is that one detective went behind the bar and into the basement through a trap door. Furthermore, there is no evidence that the bartender knew he had a right to refuse the consent. *See State v. Johnson*, 68 *N.J.* 349, 354 (1975). We find that the State has not met the burden of showing that the bartender knowingly consented to the search. *Id.* at 353–354. Consequently, it is unnecessary to decide whether a valid consent by the bartender would be binding on Williams. *See United States v. Matlock*, 415 *U.S.* 164, 94 *S.Ct.* 988, 39 *L.Ed.*2d 242 (1974).

■ To conclude, the Fourth Amendment to the United States Constitution generally prohibits a search undertaken without a valid warrant. An exception permits warrantless searches for offenses peculiar to the liquor business, when authorized by statute. *N.J.S.A.* 33:1–35 does not allow searches by local law enforcement officers conducting a criminal investigation without specific authorization.

The judgment of the Appellate Division is affirmed.

SCHREIBER, J., dissenting.

The majority holds that local police officers engaged in the enforcement of the law, including the Alcoholic Beverage Law, may not search a tavern without a warrant despite the written consent of the owner. Consequently, two loaded revolvers as well as gambling paraphernalia which had been seized are now held to have been inadmissible in evidence at the trial of defendant who had been found guilt of possessing revolvers without a permit, possessing lottery materials and working for a

lottery. This anomalous result is reached notwithstanding that the search was sanctioned by the unambiguous language of the statute regulating the liquor industry and the regulations duly promulgated thereunder by the Division of Alcoholic Beverage Control (ABC).

The following evidence was adduced on the motion to suppress. On January 22, 1976, at approximately 11:00 a. m., two Paterson police officers went to Joyce's Bar in Paterson in response to information they had received that stolen CB radios were being brought to the bar and sold. The tavern was owned by the J.K.J. Corporation whose plenary retail consumption license covered the first floor and the basement for storage. A search of a room in the basement where liquor was stored revealed gambling paraphernalia and piles of money on a desk, a stolen CB radio, and loaded .22 and .38 caliber revolvers. The defendant and two others were present. The three were placed under arrest. Williams was convicted of possession of lottery materials, working for a lottery, and possession of firearms without a permit; he was acquitted of receiving stolen property.

The United States Supreme Court has acknowledged that insofar as searches are concerned, the liquor industry is *sui generis* and the warrant requirement may be dispensed with by statute. In *Colonnade Catering Corp. v. United States*, 397 *U.S.* 72, 90 *S.Ct.* 774, 25 *L.Ed.*2d 60 (1970), the Court recognized that the liquor industry is a business over which the Legislature "has broad authority to fashion standards of reasonableness for searches and seizures," *id.* at 77, 90 *S.Ct.* at 777, 25 *L.Ed.*2d at 65, and that Congress has ample power "to design such powers of inspection under the liquor laws as it deems necessary to meet the evils at hand." *Id.* at 76, 90 *S.Ct.* at 776, 25 *L.Ed.*2d at 64.[1] See also *Marshall v. Barlow's Inc.*, 436 *U.S.* 307, 98 *S.Ct.* 1816, 56 *L.Ed.*2d 305 (1978), holding:

Certain industries have such a history of government oversight that no reasonable expectation of privacy . . . could exist for a proprietor over the stock

[1]The search in that case was invalidated because the relevant statute did not allow for forcible entries without a warrant.

of such an enterprise. . . . [W]hen an entrepreneur embarks upon such a business, he has voluntarily chosen to subject himself to a full arsenal of governmental regulation. [*Id.* at 313, 98 *S.Ct.* at 1821, 56 *L.Ed.*2d at 312; citations omitted]

*United States v. Biswell*, 406 *U.S.* 311, 92 *S.Ct.* 1593, 32 *L.Ed.*2d 87 (1972), is analogous. That case involved the regulation of firearms dealers whose businesses, like those in the liquor industry, were "pervasively regulated" in the interest of crime prevention. *Id.* at 316, 92 *S.Ct.* at 1596, 32 *L.Ed.*2d at 92. A federal treasury agent conducted a warrantless search for firearms in the locked storeroom of a pawnshop. He found and seized two sawed-off rifles which the defendant-owner of the pawnshop was not licensed to possess. The defendant was convicted of engaging in business as a dealer in firearms without having paid the special occupational tax required under § 5845 of the Internal Revenue Code. The search was upheld for "[w]hen the officers asked to inspect respondent's locked storeroom, they were merely asserting their statutory right . . . ." *Id.* at 314, 92 *S.Ct.* at 1595–96, 32 *L.Ed.*2d at 91. The Court made the following significant statement:

It is also apparent that if the law is to be properly enforced and inspection made effective, inspections without warrant must be deemed reasonable official conduct under the Fourth Amendment. . . . Here, if inspection is to be effective and serve as a credible deterrent, unannounced, even frequent, inspections are essential. In this context, the prerequisite of a warrant could easily frustrate inspection; and if the necessary flexibility as to time, scope, and frequency is to be preserved, the protections afforded by a warrant would be negligible. [*Id.* at 316, 92 *S.Ct.* at 1596, 32 *L.Ed.*2d at 92]

Thus, if the Legislature has provided for warrantless searches of taverns, such searches will not be subject to the warrant clause of the Fourth Amendment.

It is well settled that the State's police power to regulate the field of intoxicating liquors is practically limitless. *Fanwood Borough v. Rocco*, 33 *N.J.* 404, 411 (1960). The liquor industry is peculiarly subject to strict governmental control. *In re Disciplinary Proceedings Against Schmidt*, 79 *N.J.* 344, 353–354 (1979); *Grand Union Co. v. Sills*, 43 *N.J.* 390, 398, 403–404 (1964). In exercise of its authority, the Legislature enacted the Alcoholic Beverage Law, *N.J.S.A.* 33:1–1 *et seq.*, which embodies comprehensive control over retail dispensers of intoxicating liquors.

This law is "intended to be remedial of abuses inherent in liquor traffic and shall be liberally construed." *N.J.S.A.* 33:1–73.

The statute provides for inspections and searches of premises in which liquor is sold. *N.J.S.A.* 33:1–35. It also provides that:

Investigations, inspections and searches of licensed premises may be made without search warrant by the director, his deputies, inspectors or investigators, by each other issuing authority *and by any officer.* [*Ibid*; emphasis added]

The act defines the word "officer" to mean

Any . . . police officer, member of the department of State police, or any other person having the power to execute a warrant for arrest, or any inspector or investigator of the Division of Alcoholic Beverage Control. [*N.J.S.A.* 33:1–1(p)]

Use of municipal police to search for violations involving the alcoholic beverage law is also contemplated by *N.J.S.A.* 33:1–71 which states:

To the end that local police and other enforcing agencies shall enforce this chapter in the interest of economy and effective control, all officers shall use all due diligence to detect violations of this chapter and shall apprehend the offenders . . . .

The law empowers the ABC Director to promulgate general rules and regulations for the proper control of the distribution of alcoholic beverages and enforcement of the Alcoholic Beverage Law. *N.J.S.A.* 33:1–39. That section also specifies that the

rules and regulations may cover the following subjects: . . . ·racketeering; prostitution; . . . criminals; disreputable characters; gambling, slot machines and gambling devices; . . . storage; . . . and such other matters whatsoever as are or may become necessary in the fair, impartial, stringent and comprehensive administration of this chapter. [*Ibid.*]

In accordance with that authority the Director promulgated *N.J.A.C.* 13:2–23.5(c) which states in pertinent part that

No licensee shall allow, permit or suffer the licensed premises to be . . . used in furtherance or aid of or accessible to any illegal activity or enterprise.

Lastly, an applicant for a liquor license acknowledged on an application form prepared by the Director that

The applicant consents that the licensed premises and all portions of the building containing same, including . . . cellars . . . and every part of the structure of which the licensed premises are a part . . . may be inspected and searched without warrant at all hours by the Director of the Division of Alcoholic Beverage Control . . . duly authorized inspectors, investigators and agents and *all other officers.* [emphasis added]

If anything is clear from these statutory provisions and regulations, it is that inspectors or investigators of the Division of Alcoholic Beverage Control have the right generally to search a tavern, including its basement, without a warrant to uncover illegal activities such as harboring stolen goods. The provisions and regulations vest the municipal police with the same authority (which is acknowledged by the licensee in its written consent). Placing that authority in the local police comports with the powers of the police to enforce state as well as local laws. See *State v. McFeeley*, 136 *N.J.L.* 102, 107–108 (Sup.Ct.1947); *State v. Sheehan*, 14 *N.J.Misc.* 466 (Sup.Ct.1936); *N.J.S.A.* 40A:14–152.

This Court has previously considered and approved the propriety of a warrantless search of a tavern by local police in *State v. Zurawski*, 47 *N.J.* 160 (1966), aff'g o. b. 89 *N.J.Super.* 488 (App.Div.1965). Linden police searched a tavern and found lottery slips under a stack of towels in the pantry and beneath boxes on a shelf in the kitchen. Defendant's contention that the statutory power in the Alcoholic Beverage Law was misused "because the search was conducted 'to uncover a violation of the criminal law,'" 89 *N.J.Super.* at 490, was rejected. The Appellate Division whose opinion was adopted by the Supreme Court noted: (1) that local police were authorized to enforce the law by the statute, *N.J.S.A.* 33:1–35, as implemented by *N.J.S.A.* 33:1–71, 89 *N.J.Super.* at 490; (2) that the licensee had consented to searches by all other officers, *id.* at 491; (3) that the regulations prohibited possession of lottery tickets, *ibid.*; and (4) that the legislative policy for strict control of a business said to be "'so prone to evils,'" citing *Boller Beverages, Inc. v. Davis*, 38 *N.J.* 138, 150 (1962), would be thwarted if the search were not upheld. 89 *N.J.Super.* at 492. See also *State v. Ransom*, 169 *N.J.Super.* 511 (App.Div.1979). The majority attempts to distinguish *Zurawski* on the ground that "[t]here was no dispute that the search was authorized by the board." 84 *N.J.* at 225. However, that is a misreading of the record. Drawing upon an apparent agreement in the parties' factual statements in their briefs, the Appellate Division assumed no more than the fact that one of the police officers said the inspection was being made on behalf

of the municipal alcoholic beverage control board. A fair reading of the opinion indicates that the search was authorized because of the statutory provisions, regulations and the licensee's consent.

Even if the municipal police had not been authorized by statute to search the premises without a warrant, another reason supports the denial of the motion to suppress with regard to the charge of working for a lottery. The majority correctly notes that defendant Williams must have standing in order to challenge the search. This standing question is now merged with the substantive Fourth Amendment inquiry, so that defendant has the burden of showing a "legitimate expectation of privacy in the invaded place." *Rakas v. Illinois,* 439 *U.S.* 128, 143, 99 *S.Ct.* 421, 430, 58 *L.Ed.2d* 387, 401 (1978) (citations omitted).[2] Defendant made no such showing at the suppression hearing. In fact, he did not produce any witnesses or evidence. In considering a suppression motion, the court is limited to the evidence adduced at the suppression hearing. *State v. Gora,* 148 *N.J.Super.* 582, 592 (App.Div.1977), certif. den. 74 *N.J.* 275 (1977); *State v. Jordan,* 115 *N.J.Super.* 73 (App.Div.1971), certif. den. 59 *N.J.* 293 (1971). As defendant failed to show any interest in the searched premises at the hearing, the motion was properly denied.[3]

Finally, the majority claims that a two-day lapse between the tip about stolen radios and the actual search somehow necessi-

[2]The burden would be on the State, however, to demonstrate by a preponderance of the evidence an exception to the warrant requirement. See, *e. g., State v. Whittington,* 142 *N.J.Super.* 45, 51–52 (App.Div.1976).

[3]Many "facts" relied upon by the majority were not produced on the motion. For example, there was no showing that the defendant lived in the building, was the janitor, and kept tools in the storage room.

Different considerations apply to the possession of lottery materials and unlicensed firearms charges. The cases at the time of the suppression hearing apparently granted defendant "automatic standing" to challenge the search as to those offenses, see *Jones v. United States,* 362 *U.S.* 257, 80 *S.Ct.* 725, 4 *L.Ed.2d* 697 (1960), although this is no longer the law. See *United States v. Salvucci,* —— *U.S.* ——, 100 *S.Ct.* 2547, 65 *L.Ed.2d* 619 (1980).

tated obtaining a warrant. There is no evidence in the record to indicate such a passage of time. Moreover, the warrant exception for the alcohol industry, in which one has a substantially diminished expectation of privacy, permits such searches although time may have been available to obtain a warrant.

The search in this case was made at a tavern where the police had reason to believe illegal operations in violation of the liquor laws were occurring. The police have been expressly authorized by statute to conduct warrantless searches to seek out such violations. As law enforcement officers they had a right to inspect the licensed premises to determine whether any such illegal activity existed. Suppressing relevant and probative evidence discovered in the course of that duty will only serve, contrary to the legislative intent, to weaken the Director's control over this highly regulated industry.

I would reverse.

*For affirmance*—Chief Justice WILENTZ, and Justices SULLIVAN, PASHMAN, CLIFFORD, HANDLER and POLLOCK —6.

*For reversal*—Justice SCHREIBER—1.